

CERTIFIED COPY
A True Copy
Teste:
Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit

In the

# United States Court of Appeals

### For the Seventh Circuit

No. 11-2827

JACQUELINE TOWNSEL,

                        *Plaintiff-Appellant*,

v.

DISH NETWORK L.L.C.,

                        *Defendant-Appellee*.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 10 C 7694—**Ronald A. Guzmán**, *Judge*.

ARGUED JANUARY 17, 2012—DECIDED FEBRUARY 16, 2012

Before EASTERBROOK, *Chief Judge*, and CUDAHY and HAMILTON, *Circuit Judges*.

EASTERBROOK, *Chief Judge*. Jacqueline Townsel signed up for satellite TV service from DISH Network. As with cell phones, the cost of equipment is amortized over two years through payments for the service; a customer who drops the service owes a termination fee to cover the unpaid portion of the equipment's cost. Townsel agreed to pay a termination fee if she discon-

Case: 1:10-cv-07694 Document #: 72 Filed: 03/09/12 Page 2 of 9 PageID #:406

tinued the service for any reason during the first two years, and she authorized DISH to charge her debit card should that occur. Before the two years were up, Townsel stopped paying the monthly service charge. DISH treated this as a discontinuation of service and collected the termination fee via the debit card. Townsel replied with this suit, which contends that DISH violated 42 U.S.C. §407(a).

Section 407(a), part of the Social Security Act, provides that benefits may not be assigned or subject to attachment or garnishment at the behest of creditors. This is what it says: "The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law." It covers all benefits under the Act, including retirement benefits, disability benefits, and supplemental security income.

To DISH Network, Townsel's debit card looked just like any other. Use of a debit card instructs a bank to transfer money to the merchant from a particular checking account. Townsel contends that, unbeknownst to DISH, all funds in her account came from Social Security benefits. (We must assume that this is true.) She contends that authorizing DISH to use her debit card "assigned" Social Security benefits to it (the first clause of §407(a)). Earlier in the litigation she also asserted that, when the bank allowed DISH to access

No. 11-2827 3

her checking account through the debit card, it subjected Social Security funds to "legal process". That theory has been dropped, and sensibly. Use of a debit card is not remotely like garnishment, attachment, or "other legal process". Legal process is involuntary (from the debtor's perspective), while Townsel's arrangement with DISH was consensual. Submitting a check for payment through the banking system is not "legal process" even though trying to collect a judgment based on an unpaid check would be. See *Washington State Department of Social & Health Services v. Guardianship Estate of Keffeler*, 537 U.S. 371, 383–86 (2003) (holding that under §407(a) only a formal legal proceeding similar to garnishment or attachment counts as "legal process").

Townsel concedes that merchants and banks do not violate §407(a) when they allow Social Security recipients to pay for goods and services by writing checks, or using debit and credit cards. Nonetheless, she asserts, the use of a debit card becomes a forbidden "assignment" when the customer authorizes the debit in advance. Two years could have passed between Townsel's authorization and DISH's collection of the termination fee; when payment is deferred, Townsel insists, authorization to use a debit card becomes a forbidden "assignment" unless the customer can rescind consent before the merchant resorts to the debit card. The district court disagreed and dismissed the complaint for failure to state a claim on which relief may be granted. (Technically it denied a motion for leave to amend a complaint that was doomed to fail; Townsel concedes that her original claim was faulty but contends that a §407(a) claim would have

4                                                     No. 11-2827

saved her suit. The judge deemed the proposed amendment futile, which is functionally the same as allowing amendment and then dismissing under Fed. R. Civ. P. 12(b)(6).)

Logically the first question is whether §407(a) creates a private right of action. It does not do so expressly, nor does any other statute authorize private parties to sue for damages based on assignments of Social Security benefits. Townsel says that the statute *must* authorize a private action for damages; otherwise how could it be enforced? The answer is: "defensively." Someone who tries to collect assigned Social Security benefits can be met with a defense under §407(a). That is how several §407 cases have found their way to the Supreme Court. See, e.g., *Bennett v. Arkansas*, 485 U.S. 395 (1988); *Philpott v. Essex County Welfare Board*, 409 U.S. 413 (1973). A creditor that tried to garnish or attach Social Security benefits, in or out of bankruptcy, likewise would encounter a §407 defense. Some other cases have used 42 U.S.C. §1983, and the holding of *Maine v. Thiboutot*, 448 U.S. 1 (1980), to enforce §407 against state actors, who may try to lay hands on Social Security benefits to recoup welfare or Medicaid outlays. Efforts to extend this approach to private defendants have been rebuffed. See *London v. RBS Citizens, N.A.*, 600 F.3d 742 (7th Cir. 2010) (a retiree can't use §1983 to enforce §407(a) against a private creditor). Cf. *Beler v. Blatt, Hasenmiller, Leibsker & Moore, LLC*, 480 F.3d 470 (7th Cir. 2007) (a recipient can't enforce §407(a) through the Fair Debt Collection Practices Act either).

No. 11-2827 5

Surprisingly, none of the 13 courts of appeals has decided whether the judiciary should create a private right of action to enforce §407(a) through an award of damages. Two district courts have holdings on the subject; both concluded that the Supreme Court's current approach to implied private rights of action, see *Cort v. Ash*, 422 U.S. 66 (1975), does not support damages under §407(a). See *Harris v. Prudential Insurance Co.*, 2010 U.S. Dist. LEXIS 21877 (N.D. Ohio Mar. 10, 2010); *Alexander v. Bank of America*, 2007 U.S. Dist. LEXIS 77368 (W.D. Mo. Oct. 17, 2007). DISH contends that these decisions conclusively establish that Townsel lacks a private damages action. Yet district courts' decisions are not authoritative, even in the rendering district (other district judges may disagree). It takes an appellate decision to resolve a legal question—and then only within the circuit's territory, and subject to review by the Supreme Court, which may reject an appellate consensus. See, e.g., *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164 (1994).

The district court bypassed the private-action subject, which is not jurisdictional, see *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308, 316–20 (2005), and went straight to the merits. We are content to do the same, but readers should not infer from this any hidden decision that a private action exists. The question is open here, as in all other circuits.

Townsel relies on *Philpott* for the proposition that Social Security benefits do not lose the protection of §407(a) when deposited in a checking account. Monies that can

be traced to an origin in Social Security benefits remain covered by §407(a). DISH does not doubt this proposition, nor did the district judge. Townsel lost not because of a belief that §407(a) is inapplicable but because *using* Social Security benefits to buy goods and services differs from *assigning* them. Assignment in law means an anticipatory transfer of property rights. Thus if Townsel had instructed the Social Security Administration to send her checks to DISH (or an auto dealership), which would deduct what she owed and route the residue to Townsel's account, that would be an assignment. This is what happened in both *Philpott* and *Bennett*. In each case, a state required people to sign over their Social Security benefits to reimburse the state for outlays made on the person's behalf. But DISH did not ask for Townsel's Social Security benefits, and she did not try to direct the Social Security Administration to send it any of her checks. All DISH wanted—and all it received—was payment of a debt that Townsel voluntarily incurred. DISH neither knew nor cared where the money came from.

The source of funds used to pay obligations on a debit card (or a credit card, or a check) is invisible to the merchant. Townsel says that all of the money in the account linked to the debit card she used to pay DISH came from Social Security benefits. But DISH did not know this—could not have known this. If Townsel had sold her house or car and deposited the proceeds in the checking account, DISH wouldn't have known that either. Likewise if Townsel had received an inheritance or a gift from a relative. And tracing assets would perplex

No. 11-2827 7

even the bank, which itself may not know the source of particular funds (a recipient may have cashed her Social Security check and spent part of the money before depositing the rest). If some money in an account comes from Social Security benefits and some from employment (many a Social Security recipient continues to work), how would the bank know when a debit-card transaction is a forbidden "assignment"? Would it use FIFO (first in, first out)? LIFO (last in, first out)? Ask what portion of the average balance reflected federal benefits? Implementation would be impractical. Not a word in §407(a) implies that Congress has established such a regime.

If using Social Security benefits to fund payments on a debit card were treated as an "assignment" of those benefits, then merchants would fear that payments would be reversed, even if the bank authorized the transaction when it was made. (An electronic interbank network authorizes debit-card transactions only if the linked account has the funds to cover the payment, and credit-card transactions only if the customer has enough remaining in the card's credit line.) This would induce merchants to take precautions. They might ask customers whether they receive Social Security benefits and, if the answer is yes, require payment in cash. DISH might require a cash deposit equal to the termination fee, instead of accepting authorization to use a debit or credit card. (This would be equivalent to a security deposit when leasing an apartment.) It might insist that customers prepay for the antenna and other gear, eliminating the 2-year service commitment. (It offered

Townsel this option; she turned it down.) Or DISH might charge Social Security recipients extra—or conceivably refuse to deal with them at all. That's if recipients could be identified. People might balk or lie when asked "do you receive Social Security benefits?" Section 407(a) does not contain an exception for recipients who deceive merchants about the source of their funds. If all debit and credit transactions became less reliable, prices would rise, because bad debts would increase and merchants have to cover their costs. It is hard to see how Social Security recipients could be helped by a rule that would lead merchants to demand cash deposits, raise prices, or refuse to deal with Social Security recipients at all.

*Tidwell v. Schweiker*, 677 F.2d 560 (7th Cir. 1982), the authority on which Townsel principally relies, dealt with an agreement to hand over to a creditor (which happened to be a state) whatever benefits the Social Security Administration provided. That's a classic "assignment" of benefits. Townsel did not agree to hand over any benefits. She simply agreed to pay a particular debt and authorized DISH to use a debit card to facilitate the transfer of funds from the account linked to the card. Townsel was free to put her Social Security benefits in some other account (or in a pillowcase) and use a different source of money to pay DISH and the other merchants to which she presented the debit card. That option is enough by itself to show that no Social Security benefits were assigned to DISH. See *Lopez v. Washington Mutual Bank*, 302 F.3d 900 (9th Cir. 2002).

No. 11-2827                                                                 9

To repeat, *spending* money with a source in Social Security benefits is distinct from *assigning* the benefit stream itself. Townsel spent money to purchase her satellite TV reception gear. DISH did not know or care about the funds' genesis. Townsel promised to pay either by making 24 monthly payments (covering the cost of programs and equipment alike) or by a termination fee. That she chose the latter approach does not convert an ordinary commercial transaction into an "assignment" of Social Security benefits.

AFFIRMED

2-16-12